UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GINA CLARK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:18-CV-00512-NCC ) |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Gina Clark ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 21), and Defendant has filed a brief in support of the Answer (Doc. 28). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for SSI and DIB on February 2, 2015, and February 11, 2015, respectively (Tr. 176-87). Plaintiff was initially denied on October 19, 2015, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on December 15, 2015 (Tr.

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

99-102, 105-06). After a hearing, by decision dated April 28, 2017, the ALJ found Plaintiff not disabled (Tr. 13-33). On February 6, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019, and that Plaintiff has not engaged in substantial gainful activity since December 10, 2014, the alleged onset date (Tr. 18). The ALJ found Plaintiff has the severe impairments of degenerative disc disease of the cervical and lumbar spine, obesity, affective disorder, anxiety disorder and a personality disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18-19).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[2] with the following limitations (Tr. 20). She can only occasionally climb ramps and stairs, stoop and crouch (*Id.*). She should never climb ladders, ropes or scaffolds (*Id.*). She should never be required to kneel or crawl (*Id.*). She can only use her left, non-dominant hand for overhead reaching on a frequent basis and she can tolerate only occasional exposure to vibration (*Id.*). She is capable of frequent handling, but only occasional fingering with her left upper extremity (*Id.*). She should have no exposure to hazards such as unprotected heights and dangerous machinery (*Id.*). She is capable of performing

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 416.967(b), 404.1567.

2

simple, routine tasks in an environment where contact with supervisors, co-workers and the general public is occasional (*Id.*). The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including garment sorter, shipping weigher, and inserting machine operator (Tr. 26-27). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 27). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but

is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id*. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the RFC assessment is conclusory and does not contain any rationale or reference to the supporting evidence as required by Social Security Ruling ("SSR") 96-8P, 1996 WL 362207 (July 2, 1996) (Doc. 21 at 3-6).[3] Second, Plaintiff argues that the ALJ erred by not discussing or finding Plaintiff's carpal tunnel syndrome to be a severe impairment (*Id.* at 6-7). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

---

[3] Plaintiff does not raise any issues regarding her mental health impairments. Therefore, the Court will only address Plaintiff's arguments as they relate to her physical impairments.

**A. Severe Impairment**

The Court will first address Plaintiff's assertion that the ALJ erred by not discussing or finding Plaintiff's carpal tunnel syndrome to be a severe impairment (Doc. 21 at 6-7). At Step 2, the Commissioner must determine whether a claimant has a severe impairment. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. While a claimant has the burden of showing a severe impairment that severely limits her physical or mental ability to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work." *Caviness*, 250 F.3d at 605. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

The Court finds the ALJ's determination regarding Plaintiff's severe impairments to be supported by substantial evidence. First, Plaintiff did not list carpal tunnel syndrome as an impairment on her application (Tr. 178). *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to allege depression in an application for benefits is significant, even if the evidence of depression was later developed). Second, the record does not establish that Plaintiff's carpal tunnel syndrome constitutes "more than a minimal impact on her ability to do work." *Caviness*, 250 F.3d at 605. Although Plaintiff was diagnosed with the condition and exhibited some tenderness and diminished range of motion in her wrists, she was also noted as having normal sensation and strength in her wrists (Tr. 344, 348, 353, 430, 497, 759, 506, 509). Third, and perhaps most importantly, the ALJ considered Plaintiff's carpal tunnel syndrome when determining her RFC. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). *See also*

*Brockman v. Berryhill*, No. 2:16-CV-00032 JAR, 2017 WL 4339502, at *4 (E.D. Mo. Sept. 29, 2017); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). Specifically, the ALJ limited Plaintiff's use of her left, non-dominant hand to overhead reaching on a frequent basis[4] and only occasional fingering with her left upper extremity (Tr. 20). In so limiting Plaintiff, the ALJ noted that objective testing support carpal tunnel syndrome on her left side (Tr. 23). Therefore, to the extent the ALJ erred by not finding Plaintiff's carpal tunnel syndrome to be a severe impairment, such error was harmless in light of the ALJ's consideration of Plaintiff's carpal tunnel syndrome in her RFC analysis. *Givans v. Astrue*, No. 4:10-CV417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. March 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC). *See also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (noting that an error is harmless unless the ALJ would have decided the case differently). In conclusion, the Court finds the ALJ's determination regarding Plaintiff's severe impairments to be based on substantial evidence and consistent with Regulations and case law.

**B. RFC**

Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and

---

[4] "Frequent" basis means the activity or condition occurs from one-third to two-thirds of an 8-hour workday. SSR 83-10, 1983 WL 31251, *6 (Jan. 1, 1983). *See also* SSA Program Operations Manual System, DI 25001.001.

physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh*, 222 F.3d at 451). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found Plaintiff has the RFC to perform light work with the following exertional limitations (Tr. 20). She can only occasionally climb ramps and stairs,

stoop and crouch (*Id.*). She should never climb ladders, ropes or scaffolds (*Id.*). She should never be required to kneel or crawl (*Id.*). She can only use her left, non-dominant hand for overhead reaching on a frequent basis and she can tolerate only occasional exposure to vibration (*Id.*). She is capable of frequent handling, but only occasional fingering with her left upper extremity (*Id.*). She should have no exposure to hazards such as unprotected heights and dangerous machinery (*Id.*).

The Court will first address the consistency of Plaintiff's complaints with the record as the ALJ's evaluation of Plaintiff's symptoms was essential to the determination of other issues, including Plaintiff's RFC.[5] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v.*

---

[5] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

*Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of her analysis of Plaintiff's subjective complaints are based on substantial evidence.

First, the ALJ reviewed the objective medical evidence regarding Plaintiff's physical impairments and found that the objective findings do not support the severity of the Plaintiff's subjective complaints (Tr. 21). In doing so, the ALJ conducted a thorough review of the medical evidence encompassing nearly three full pages of her decision (Tr. 22-24). In her review, the ALJ identified diagnostic testing that was "essentially normal" with no signs of significant root encroachment, stenosis, or herniation (Tr. 23, 599). The ALJ also found Plaintiff's clinical findings to be largely normal (Tr. 22-23). For example, as the ALJ noted, an MRI of Plaintiff's lumbar spine in July 2014, shortly after Plaintiff's allegedly disabling accident, revealed some disc desiccation but upon examination she was found not to have any significant nerve compression and was advised to engage in a home exercise program (Tr. 663-65). Subsequent clinical exams indicate normal range of motion in Plaintiff's neck, normal range of motion along entire spine, normal gait, muscle strength of 5/5 in all muscle groups, and full range of motion in arms and legs (Tr. 425, 428, 432, 440, 446, 475, 517, 628, 642, 779). The ALJ further found Plaintiff's emergency room visits to be unremarkable, noting that Plaintiff is often belligerent when dealing with staff (Tr. 22). Indeed, as indicated by the ALJ, in March and April 2015 visits to the emergency room, Plaintiff was uncooperative and belligerent, respectively, and relevant measures were largely normal; she had full range of motion in her neck and extremities (Tr. 22, 475). An ALJ may properly consider the consistency of Plaintiff's subjective complaints with the objective medical evidence. *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017). To the extent the Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f

10

substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

Second, the ALJ found Plaintiff did not always comply with suggested treatment (Tr. 23). For example, as the ALJ noted, Plaintiff denied a diagnostic injection to pinpoint the precise etiology of her left arm symptoms in July 2015 (Tr. 23, 632). A "failure to follow [a] recommended course of treatment [ ] weighs against a claimant's credibility." *Guilliams*, 393 F.3d at 802 (citing *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001)). *See also Wildman*, 596 F.3d at 968-69 (it is permissible for ALJ to consider claimant's non-compliance with prescribed medical treatment).

Third, while the ALJ did not explicitly address Plaintiff's activities of daily living, it is clear from the opinion that the ALJ found Plaintiff's performance of certain tasks to be inconsistent with Plaintiff's reports regarding the intensity, persistence and limiting effects of her symptoms (Tr. 19-20, 22-23). The ALJ noted that Plaintiff stated in her July 2015 Function Report that she was able to cook, wash laundry and care for pets (Tr. 20, 260-61). Plaintiff also indicated that she was able to change the sheets on her bed, mop and vacuum (Tr. 261). Indeed, in her report, Plaintiff indicated that she gets out daily and walks or rides in a car and goes to the store to shop, when necessary to get the food they need, for approximately an hour (Tr. 262).

The ALJ also found treatment notes to indicate the Plaintiff was more capable than her testimony suggested. For example, the ALJ indicated that treatment notes dated August 2015 state that Plaintiff injured her foot while cleaning the bottom of a pool (Tr. 615) and, while Plaintiff testified that it was her sister that was cleaning the pool, the ALJ found that assertion to be "questionable" (Tr. 23, 51). The ALJ further found records indicating that Plaintiff was

diagnosed with poison ivy to be inconsistent with her complaints as it evidenced that Plaintiff was engaging in outdoor activities (Tr. 23). The ALJ also noted that Plaintiff reported falling three to five feet into dirt after being knocked over by a horse and that Plaintiff's "proximity to horses is not indicative of the level of debilitation the [Plaintiff] alleges" (Tr. 24, 781). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding that "[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility.").

Fourth, the ALJ found Plaintiff to have offered conflicting information throughout the record (Tr. 22). For example, the ALJ indicated that Plaintiff describes the patient she was assisting when she was injured as weighing 400 pounds, while at other times she states that he weighed 350 pounds (Tr. 22, 409, 463, 487, 514, 632). *See Julin*, 826 F.3d at 1087 ("Contradictory statements that [the plaintiff] made to treating physicians are yet another reason to discount her credibility.").

Fifth, the ALJ noted that the independent medical examiner, Dr. Brett A. Taylor, M.D., indicated that Plaintiff was engaging in symptom magnification and exaggeration as well as inappropriate pain behavior (Tr. 23, 588- 598). *See* Tr. 592 ("She has evidence of non-organic findings, symptom magnification exaggeration and an inappropriate pain/illness behavior."). Indeed, Dr. Taylor noted that "[d]uring her exam[,] when distracted[,] her hand resumed normal function and her 'curled hand' posturing was reversed and she used her hand normal[l]y to sit onto the exam table" (Tr. 590). *See Julin*, 826 F.3d at 1087-88 (discussing evidence in the record "from which the ALJ could infer [the plaintiff's] claims were overstated or not entirely reliable").

Finally, the ALJ found Plaintiff's allegations to be inconsistent with her observed behavior at the hearing (Tr. 22). Specifically, the ALJ noted that Plaintiff "was able to use her left arm to grab her purse and to toss an item in to the wastebasket" (Tr. 22). An ALJ may properly rely on observations she makes of a claimant's demeanor during a hearing in making credibility determinations. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because she is able to observe a claimant during his testimony); *Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations.").

Accordingly, the Court finds that the ALJ gave good reasons for finding Plaintiff's allegations regarding the severity of her conditions not fully credible, and that the ALJ's analysis was carefully linked to the evidence of record. *See Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006) ("If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment.") (internal quotation marks and citation omitted). As such, the Court further finds that the ALJ's evaluation of the consistency of Plaintiff's subjective complaints is based on substantial evidence and is consistent with the Regulations and case law.

Next, the ALJ additionally properly addressed the opinion evidence of record.[6] Specifically, the ALJ considered the reports of Dr. Brett A. Taylor, M.D. ("Dr. Taylor"), who performed two independent medical examinations of Plaintiff, one in April of 2014 and the other in October of 2015 (Tr. 23, 488-495). Although the ALJ did not assign a specific weight to the

---

[6] The ALJ addressed the opinion evidence and other detailed reports as it relates both to Plaintiff's mental health impairments as well as her physical impairments. Plaintiff only raises issues as it relates to her physical impairments, therefore the Court will not address the medical opinion evidence as it relates to Plaintiff's mental health impairments.

opinions of Dr. Taylor, the ALJ conducted a detailed analysis of the examiner's reports and highlighted several of Dr. Taylor's findings. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (an ALJ need not weigh the medical opinions of record unless the opinions are inconsistent). The ALJ noted that while Plaintiff gave herself a neck disability index of 52 at the April 2014 examination, indicating a disabling neck condition, this score was based solely on Plaintiff's own reports and thus afforded minimal weight (Tr. 23, 489). The ALJ also indicated that Dr. Taylor noted Plaintiff's gait was normal and found no evidence of instability (Tr. 23, 490). As noted by the ALJ, Dr. Taylor concluded that Plaintiff's symptoms were a result of aggravation of her pre-existing cervical degenerative disc disease and her pre-existing cervical arthritis (Tr. 23, 492-93). At his second examination of Plaintiff, as indicated by the ALJ and detailed above, Dr. Taylor noted that the Plaintiff was engaging in "symptom magnification exaggeration" and inappropriate pain behavior" (Tr. 23; 592).

The ALJ also reviewed the opinion of Dr. David Volarich, D.O. ("Dr. Volarich"), who performed an independent medical examination of Plaintiff in August of 2015 at the request of her attorney (Tr. 23, 409-417). Again, although the ALJ did not assign Dr. Volarich's opinion a specific weight, the ALJ conducted a thoughtful analysis of the report in light of Dr. Volarich's determination to defer on most clinical findings and decision not to give an opinion on Plaintiff's functional limitations since Plaintiff had not reached maximum medical improvement (Tr. 23, 416). Regardless, as the ALJ correctly noted, Dr. Volarich found Plaintiff could perform most of her activities of daily living independently (Tr. 23, 416 ("She is able to perform most acitivites for self-care.")).

Additionally, the ALJ considered the opinion of Dr. Veronica Weston, M.D. ("Dr. Weston"), a consultative examiner (Tr. 23, 443-53). The ALJ afforded the observations and

objective findings of Dr. Weston "significant weight" because, although Dr. Weston did not offer an opinion on any specific functional limitations, her clinical findings "illustrate that the [Plaintiff] does not have any physical impairment severe enough to prevent her from performing a restricted range of light-duty work activity" (Tr. 24). In doing so, the ALJ detailed Plaintiff's self-reports to Dr. Weston as well as Dr. Weston's findings (Tr. 24). Specifically, the ALJ highlighted Dr. Weston's report that Plaintiff showed: mild deficits in her fine and dexterous finger control; some reduced range of motion in her left shoulder; no clubbing, cyanosis or edema in her extremities; no muscle atrophy; decreased range of motion in her neck; full range of motion in her lumbar spine; intact reflexes in all extremities; some reduced pinprick sensation in her left arm and lower legs; full muscle strength in all extremities other than her left arm; mildly reduced strength in her left arm; and negative straight leg-raising test (Tr. 24, 446-47). The ALJ also noted that imaging of both Plaintiff's cervical and lumbar spine was negative (Tr. 24, 449-50). Although Plaintiff apparently argues that the findings of Dr. Weston are inconsistent with previous reports, an ALJ may properly review and weigh conflicting evidence, including opinion evidence. *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) ("It is the function of the Commissioner to weigh conflicting evidence and to resolve disagreements among physicians.").

The ALJ also reviewed and properly considered the Third Party Adult Function Report dated July 17, 2015, submitted by Plaintiff's sister (Tr. 19, 22, 273-80). Plaintiff's sister largely concurred with Plaintiff's own observations and those observations did not support the level of limitation as alleged by Plaintiff (Tr. 19). For example, as noted by the ALJ, Plaintiff's sister indicated that Plaintiff either has no problem or takes longer in her own personal care (Tr. 22, 274). Therefore, the ALJ did not err in her review of the opinion evidence of record.

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, as well as the evaluation of Plaintiff's subjective complaints; that the ALJ's RFC determination is based on substantial evidence; and that Plaintiff's arguments to the contrary are without merit.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 21st day of August, 2019.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE